KENICOTT v. THE SUPERVISORS.

1. A legislative act chartering a railroad company and authorizing the construction of a railroad between certain points, authorized, by its 7th, 8th, and 9th sections, the company to borrow money, and authorized also a county through which the road chiefly ran to issue its bonds and provide for their payment by the sale of its swamp and overflowed lands. A 10th section proceeded :

"Any county through which said road *may* run, and *every* county through which *any other railroad may* run with which this road *may be joined, connected*, or *intersected, may*, and are hereby *authorized* and *empowered* to aid in the con-*struction* of the *same*, or of *such other road* with which it may so connect ; and for this purpose the provisions of the seventh, eighth and ninth sections of this act *shall extend, include*, and be *applicable* to *every* such county and *every such* railroad."

*Held*, that this section did not require that the road to be aided should be actually built before a county was authorized to mortgage its lands ; but, contrariwise, that the aid was intended to be given before the road was built, and that the counties giving the aid were expected to take the ordinary risk of the success of the undertaking in which they embarked their property.

2. Where another company was subsequently chartered to build a road, whose course ran up to one terminus of the road of the company previously chartered, and thence onwards completely through another county adjoining the county in which the former road lay, and the railroad company first chartered undertook the construction of the new road from the terminus above mentioned onwards, completely through the other and adjoining counties ; *held*, that the authority to construct the connecting road, and the entering into a contract for its construction, formed a "connection" within the meaning of the above-quoted 10th section.

3. In a bill to foreclose a mortgage given to secure negotiable railroad bonds with the bonds transferred to a *bonâ fide* holder for value, no other or further defences are allowed as against the mortgage than would be allowed were the action brought in a court of law upon the bonds. *Carpenter* v. *Longan (supra*, 271) affirmed.

4. The 7th and 10th sections of the act of the Illinois legislature, of February, 1855, chartering the Mount Vernon Railroad Company, authorized

(other things permitting) the mortgage of the swamp and overflowed lands of Wayne County, Illinois, by the judges of the County Court.

5. A *bonus* is not a gift or gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of what would ordinarily be given.

APPEAL from the Circuit Court for the Southern District of Illinois; the case being thus:

The Central Railroad of Illinois runs, in a large part of its course, north and south through the State just named. The great extent of its course, and the important places through which it passes or to which it leads, made it a matter very desirable to the towns in adjoining districts on the east and west of it to connect themselves by other railroads with it. Among the towns on the east, and about eighteen miles to the east of the road, was Mount Vernon, a place situate in Jefferson County, a county on the east of the road, whose course runs parallel to the whole of the western line of the county. This town, moving early in the matter, the legislature of Illinois, in February, 1855, chartered a company, called the Mount Vernon Railroad Company, whose immediate purpose was, with the aid of a mortgage on certain lands in Jefferson County, known as the "swamp and overflowed lands," to build a road from Mount Vernon, in Jefferson County aforesaid, to the Illinois Central. Such a road, of course, would run west through the western part of Jefferson County, cross its western line, and connect soon after with the desired trunk of the Illinois Central.

The charter, in its seventh, eighth, and ninth sections, reads thus:

"SECTION 7. The corporation may borrow such sums of money as they deem advisable, and upon such terms as they may agree for the carrying out of the objects of this act, and may provide any security therefor they think best, by bond and mortgage, or otherwise.

"SECTION 8. The County Court of Jefferson County are hereby authorized and empowered to subscribe for such amount of the capital stock of said company as they may think proper. They may issue the bonds of the county, and provide for the payment of the principal and interest thereof, by *sale* or *mort-*

*gage, one or both,* of the *swamp* and *overflowed lands* of said county, and dispose of such bonds for money to pay, or in payment of their subscription to said stock; all and each to be upon such time, *terms,* and in such *mode* as they may *deem* best; or they *may make such other disposition* of said swamp and overflowed lands in *aid* of the *construction* and maintenance of said railroad as they *deem best* for the public interest of said county.

"SECTION 9. Before any disposition is made of said swamp and overflowed lands, or any subscription to the stock of said company, the said County Court may, at any regular or special term of said court, order a special election to be held for the purpose of taking the sense of the qualified voters of the county thereupon—giving such notice thereof as they may deem proper —and which shall be conducted, and returns made, canvassed, and published in all respects as other county elections. The County Court shall prepare a proposition or propositions of the mode or modes, one or more, containing a *brief, clear, distinct idea of the plan or plans proposed by them for aiding in constructing of said road;* which said proposition shall be printed at large as an election ticket, and the voters may express their will on said proposition by writing 'Yea' and 'Nay' on a separate ticket. The proposition or plan having the highest number of votes shall be adopted by the County Court,".

But in addition to the sections thus quoted followed another and very important one in these words:

"SECTION 10. Any county through which said road *may* run, and *every* county through which *any other railroad may* run with which this road *may be joined, connected,* or *intersected, may,* and are hereby *authorized* and *empowered* to aid in the *construction* of the *same,* or of *such other road* with which it may so connect; and for this purpose the provisions of the seventh, eighth, and ninth sections of this act *shall extend, include,* and be *applicable* to *every* such county, and *every such* railroad."

So far as to Jefferson County; and this 10th section.

On the east again of Jefferson County, and, like it, having "swamp and overflowed lands," and like it interested in gaining a connection with the great trunk of the Illinois Central, was Wayne County; the west line of this county being about eleven miles east of the town of Mount Vernon.

On the same day of February, 1855, when the charter already mentioned was granted, a charter had been granted to another company, named the Belleville and Fairfield Railroad Company, whose purpose was the construction of a road from Belleville (a place in Illinois near St. Louis, and west of the Illinois Central), through Nashville (Illinois) and Mount Vernon, to Fairfield, a place in Illinois nearly east of Mount Vernon, and so finally to Louisville, Kentucky. This road, which ran from west to east, was chartered so as to run through both the counties of Jefferson and Wayne, and by the terms of the 10th section of the Mount Vernon road might " be joined, connected, or intersected" with it.

This charter to the Belleville and Fairfield road being in existence, the County Court of Wayne County, on the 13th of March, 1856, made a deed of its swamp lands to one Charles Wood, in trust for that company or any other company that would build a railroad through the county. This deed recited that a connection had been made between the Mount Vernon and the Belleville and Fairfield roads, by which the latter would become a part of and elongation of the former; that the power to appropriate the swamp lands in Wayne County through which the said road was situated was brought into operation; that a vote had been taken in November, 1855, to appropriate and donate said lands for the purpose of aiding in constructing the said road, and that this power had been conferred by the 9th section of the charter of the Mount Vernon company, and that in execution of such authority and power the deed was made by the County Court. The deed contained a proviso, that if the road should not be made in a certain time the land should be reconveyed by Wood to the county.

An act of the Illinois legislature, passed February 14th, 1857, amendatory of the charter of this Belleville and Fairfield company, and extending its line of transit, changed the name of the company to " The St. Louis and Louisville Railroad Company." The proposed line of the road as thus enlarged crossed the Illinois Central and was located directly

through five different counties, of which Wayne was one. The act declared:

"Section 4. The vote heretofore taken in Wayne County to donate the swamp lands to the Belleville and Fairfield Railroad Company, &c., and the conveyance of said land by the County Court of said county in trust for the use of the said railroad company are, and the same are hereby declared to be legal and valid.

"Section 5. Each county through which said railroad runs may donate the swamp lands of such county to the St. Louis and Louisville Railroad."

In this state of things the county of Wayne held an election in November, 1858, in which the question was thus proposed to the voters:

"For appropriating the swamp lands of Wayne County as a *bonus* to any company for building a railroad through said county.

"Against the same."

A majority of votes was cast in favor of the proposition, and thereupon soon after this time two persons, named Van Duser and Smith, entered into a contract with Wayne County for building that part of the road of the Belleville and Fairfield company (or, as it now was, the St. Louis and Louisville company) lying between the east line of Wayne County and Mount Vernon, thus running across the entire width of Wayne County. This contract having been partially executed by Van Duser and Smith was assigned to the Mount Vernon Railroad Company, in which they had become the chief stockholders, and that company undertook the construction of this portion of the road.

The county of Jefferson entered into a like contract for the construction of the Mount Vernon road, from Mount Vernon to the Illinois Central.

On the 20th of April, 1859, S. J. Wilson and T. M. Scott, judges of the County Court of Wayne County, mortgaged the whole, about 100,000 acres, of the swamp and overflowed lands of the county to Isaac Seymour, of New York, in trust

to secure the payment of bonds to the amount of $800,000, to be issued by the Mount Vernon Railroad Company. The recitals of the mortgage ran thus:

"WHEREAS, The Congress of the United States duly passed an act, approved September the 28th, A.D. 1850, entitled 'An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' and in pursuance thereof the Secretary of the Interior of the United States caused a patent to be issued to the State of Illinois for all the swamp and over- flowed lands within its limits, to be *situated* under the direction of the commissioners of the Land Office:

"*And whereas*, The legislature of the said State of Illinois passed an act, approved by the governor of said State on the 22d of January, A.D. 1852, entitled 'An act to dispose of the swamp and overflowed lands, and to pay the expenses of select- ing and surveying the same,' which said act authorized the ap- propriation and disposal of said lands for such purposes as may be deemed expedient by the court or county judges:

"*And whereas*, The legislature of the State of Illinois passed an act, approved by the governor of said State on the 15th of February, A.D. 1855, entitled 'An act to incorporate the Mount Vernon Railroad Company,' whereby all such persons and corporations as shall become stockholders under the pro- visions of the said act, and their successors, were duly incorpo- rated into a body politic and corporate under the name of the Mount Vernon Railroad Company, and the parties of the first part were duly authorized and empowered to make such dispo- sition of the swamp and overflowed lands within the said county of Wayne, in aid of the construction and maintenance of the said railroad, as they deem best for the public interest of said county:

"*And whereas*, At a special term of the said County Court of the county of Wayne, held on the 28th of September, A.D. 1855, an order was duly made and entered by the same court, whereby a special election was ordered and directed on the 5th of Novem- ber, A.D. 1855, to be held for the purpose of taking the sense of the qualified voters of the county upon the mortgaging that por- tion of the said overflowed and swamp lands hereinafter de- scribed, for the purpose of aiding in the construction and main- tenance of the said the Mount Vernon Railroad; and the said

County Court did then and there order public notice of such special election to be given by advertisements, in accordance with the statute laws of said State of Illinois, which said notice was given and published in conformity with the terms and provisions of said order; and the said County Court did prepare a proposition containing *a brief, clear, and distinct idea of the plan proposed by them for aiding in constructing said road,* and did cause the said propositions to be duly printed at large as an election ticket, and presented to the said qualified voters of said county, to be used at such election, in the words and figures following, to wit:

"For appropriating the swamp lands of Wayne County as a bonus to any company for building a railroad through said county."

"Against the same."

"And the said special election was duly held, pursuant to said notice, on the said 5th day of November, A.D. 1855, and conducted in all things in conformity to the provisions of said charter and the laws of the said State of Illinois, and the returns thereof made, canvassed, and published in all respects as other county elections are required to be in and by the said laws:

"*And whereas,* The said proposition or plan above stated received the highest number of votes, and a majority of all the votes given at such election, and a majority of the qualified voters of the said county of Wayne expressed their will by writing and voting 'Yea' upon the said several printed propositions or tickets cast by them at the said election; and whereas, upon the returns of said special election being duly made, canvassed, and published as aforesaid, the County Court of the county of Wayne did adopt the proposition or plan having the highest number of votes as aforesaid; and did order and adjudge and determine to execute a mortgage in conformity to such proposition or plan, and to the provision of this instrument, to the parties of the second part as trustees upon the land hereinafter described, for the purpose of aiding in the construction and maintenance of the said Mount Vernon Railroad, which said order was duly made in open court on the 20th of April, A.D. 1859:

"*And whereas,* By virtue of the said several acts and proceedings the parties of the first part have become endowed with the

requisite power and authority to dispose of and mortgage the said lands for the purpose of aiding the construction and maintenance of the railroad of the said Mount Vernon Railroad Company, and the said parties deem it best for the public interest of the said county of Wayne that the lands hereinafter described should be mortgaged to the party of the second part, trustee and commissioner, duly appointed and selected by both the said parties of the first part and the said the Mount Vernon Railroad Company, upon the terms and conditions particularly set forth :

"*And whereas*, The said the Mount Vernon Railroad Company has deemed it advisable to provide for the issue and disposal, now and hereafter, of its construction bonds, for the purpose of raising funds, from time to time, for the construction and completion of the railroad, and for the equipment thereof, and the expenses of organizing and operating the same, and thereby to become indebted to divers persons, bodies politic or corporate, who shall become holders of such construction bonds and obligations in the just and full sum in the aggregate of $800,000, secured to be paid by their 400 construction bonds or obligations of and for $500 each, and by their 600 construction bonds or obligations of and for $1000 each, to the extent of $800,000 in the aggregate, to bear date on the first day of ——, A.D. 1859, and be payable in fifteen years from the date thereof, which will be in the year 1874, at the Bank of North America, in the city of New York, with interest at the rate of 7 per centum per annum, payable semi-annually at the Bank of North America, in said city of New York, on the 1st day of May and November, in each year, to be secured hereby ; all which bonds are to have warrants for the payments of the interest thereon attached, and to be in the form following, the respective number and amounts thereof being omitted :

" The Mount Vernon Railroad Company acknowledges itself to owe Isaac Seymour or bearer $1000, which said company hereby promises to pay on presentation of this bond hereof at the Bank of North America, in the city of New York, on the first day of May, A.D. 1874, with interest thereon at the rate of 7 per cent. per annum, semi-annually, on the first day of May and November in each year, until the said principal sum shall be paid on presentation of the proper interest warrants hereto annexed at the said Bank of North America.

" This bond is one of a series of 400, of $500 each, and 600 of $1000 each, of like term and date, not exceeding in the whole the sum of $800,000, issued

and to be issued for the purpose of the construction and the completion of the said railroad, and the expenses incident thereto. Full payment of the principal and interest of the whole issue of these bonds is secured by a mortgage bearing even date herewith to the said Isaac Seymour, of the city of New York, as trustee, of 100,000 acres of land in the county of Wayne, in the State of Illinois, granted by the said State and county, for the purpose of constructing and maintaining said railroad, and also by a mortgage to said Isaac Seymour, as trustee of said railroad, its branches, and other real and personal property of said company.

"In witness whereof the said the Mount Vernon Railroad Company has caused this bond to be executed and attested in its behalf, by its president and treasurer, and its interest warrants to be signed by its secretary, and its corporate seal to be hereto affixed at the ——, in the State of ——, this —— day of ——, A.D. 1859."

"Which said construction bonds or obligations are primarily secured by this indenture, and the lands herein described, and the avails thereof, are to constitute a primary fund for the payment of the principal and interest of the said bonds.

"Now, therefore, this indenture witnesseth: That the said parties of the first part, in consideration of the premises and of one dollar to them severally paid by the parties of the second part at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, remised, released, conveyed, and confirmed, and, by these presents, do grant, bargain, sell, remise, release in full of, convey, and confirm to the party of the second part, his successors, and the survivors of them, and the heirs and assigns of such survivors, forever, all and singular the land and premises situate and lying and being in the county of Wayne, and the State of Illinois, bounded and described as follows, that is to say."

[Here followed a description by tracts of all the lands mortgaged; these being the swamp and overflowed lands in question.]

"To have and to hold all and singular the lands and premises hereby granted or intended so to be, and each and every part and parcel thereof, with the appurtenances, unto the said party hereto of the second part, his successors and assigns, forever, as joint tenants, and not as tenants in common, for the uses and purposes in this indenture set forth and declared.

"And this indenture further witnesseth that the said parties of the first part, for themselves and their successors do cove-

nant and agree that if default shall be made in the payment of the interest upon the said construction bonds or obligations, so that a sum equal to one year's interest of the whole amount of the said construction bonds or obligations already issued and secured by these presents, [?] or that if default shall be made in the payment of the principal of said construction bonds or obligations, that then and from thenceforth it shall and may be lawful for the said parties of the second part to enter into and upon and take possession of all and singular the lands and all the premises included or intended to be included in this mortgage."

This mortgage was accompanied by a deed of trust of the same date between the same parties, with recitals similar to it, and equally in the interests of the bondholders. Both, as appeared by an entry in the records of the County Court, were thus recognized in that tribunal. The entry was thus:

APRIL SPECIAL TERM, 1859:

"At a special term of the County Court of Wayne County, began and held at the court-house in Fairfield, on the 20th day of April, 1859. Present, Hon. S. J. Wilson, judge; T. M. Scott, associate; J. W. Barnhill, clerk."

*Order of County Court of Wayne County.*

"And now, on this day, the court executed to Isaac Seymour, of the city of New York, a deed of trust to certain swamp and overflowed lands lying in said Wayne County. The conditions and provisions of said trust deed will more fully appear by reference to said trust deed, which is entered of record in the recorder's office of said county in mortgage-book 'B,' pages 330 to 341; and also executed a mortgage on the same lands to the said Isaac Seymour, as collateral security, to enable the Mount Vernon Railroad Company to procure money to build a railroad through Wayne, from the eastern boundary of said Wayne County to Mount Vernon, in Jefferson County; and which mortgage is referred to and is recorded in the recorder's office of said Wayne County, in mortgage-book 'B,' pages 341 to 359.

"And it is ordered by the court that S. J. Wilson be, and he is hereby, appointed a commissioner to act as the attorney of said Isaac Seymour, trustee as aforesaid, in the said county of Wayne, State of Illinois."

The Mount Vernon Railroad Company issued the bonds such exactly as were described in the recitals above given of the mortgage; and certain of them (to the extent of $73,000) passed into the hands of one Kenicott and others, citizens of Massachusetts. These holders of the bonds had paid value for them before their maturity, without notice of any defect or infirmity in the bonds or in the mortgage. The interest being unpaid, they filed a bill in the court below against the Board of Supervisors of Wayne County impleaded with the Mount Vernon Railroad Company, to foreclose the mortgage given as already mentioned by the county just named.

In its answer, the defendant insisted that the Mount Vernon Railroad Company was not located in, did not run in the county of Wayne, and had no authority or right to run or locate its road through that county. It was denied that there was any other railroad running through the county of Wayne with which the Mount Vernon road was joined, or connected, or intersected, and it was averred that it did not then connect with any railroad in the county of Wayne. Proofs were taken, and the bill was dismissed upon the ground that the proofs failed to show that at the date of the mortgage and deed of trust for securing the payment of the bonds there was any line of railroad constructed, or authorized to be constructed, through the county of Wayne, with which the Mount Vernon railroad was joined, connected, or intersected. The plaintiffs thereupon appealed to this court.

*Mr. J. C. Robinson, for the county of Wayne, in support of the judgment below,* argued that the Mount Vernon railroad could not under its charter run through Wayne County; that upon the most liberal construction to be given to the tenth section the power depended on the existence of one of two facts:

1st. That the Mount Vernon road may run through Wayne County; OR

2d. That some other railroad may run through that county with which the Mount Vernon road " may be joined, connected, or intersected."

Now there was no proof of any consolidation of the roads; a matter in Illinois confessedly to be done only in a way prescribed by statute.*  The case was sought, in fact, to be rested on a sort of connection by contract of the Mount Vernon road at Mount Vernon, with a railroad through Wayne County, to be built by the effort of Wayne County, from east to west, and so on to Mount Vernon.  But no such power can be got from any provision which is contained in the Mount Vernon charter; and as to any proposition that a county by virtue of its municipal organization possesses power to build a railroad, the idea is one which no one in this day would advance.   A county, as the law is now settled to be, is created by the law-making power, a municipal organization for the purposes of government alone, and sustains to the sovereign power the relation of a mere corporation, with only such powers as have been expressly granted, or result by necessary implication.

No doubt under the laws of Illinois a county may sell and convey its real estate.  But neither under those laws nor independently of them may a county make a gift, a pure donation, of its property.   The vote taken here was "for appropriating the swamp lands of Wayne County as a *bonus* to any company for building a railroad through said county."  Such a vote was a nullity.   To *give away*, without any consideration, the property of the public is beyond the power of any county court, or even of the people themselves.†

By the eighth section of the charter of the Mount Vernon road, the County Court is required "to *prepare a proposition or propositions* OF THE MODE OR MODES, *one or more, containing a brief, clear, distinct idea* OF THE PLAN OR PLANS *proposed by them for aiding in constructing of* SAID ROAD."

The proposition submitted was this:

" For appropriating the swamp lands of Wayne County as a

---

* Act of 28th February, 1844; Session Laws of 1854, p. 9; Gross's Statutes, p. 537, ch. 86a.

† Whiting v. Sheboygan Railroad Co., 25 Wisconsin, 167; The People v. The Township Board of Salem, 9 American Law Register, new series (August, 1870), p. 487.

bonus to any company for building a railroad through said county."

Does this proposition embrace a "brief, clear, distinct idea" of a "plan" to aid in the construction of the *Mount Vernon Railroad,* whose nearest point to Wayne County is eleven miles west of its most western boundary, and by *mortgaging* these lands *to secure the payment of the bonds to be issued by that company?* No one will say it does.

As to the recitals in the mortgage which we suppose will be set up by way of estoppel, it is enough to say that these complainants are entire strangers to that instrument, and can take no benefit from it; there is no proof in the record that they ever saw or heard of it, and of course their action could not have been at all influenced by it. Under such facts there can be no application of the law of estoppel, as it does not operate as to strangers.[*]

Neither does the doctrine of estoppel apply to a grantor acting officially as a public agent or trustee.[†]

*Mr. W. B. Scates, contra, for the bondholders.*

Mr. Justice HUNT delivered the opinion of the court.

The following propositions may be considered as settled in this court.

1. If an election or other fact is required to authorize the issue of the bonds of a municipal corporation, and if the result of that election, or the existence of that fact, is by law to be ascertained and declared by any judge, officer, or tribunal, and that judge, officer, or tribunal, on behalf of the corporation, executes, or issues the bonds, with a recital that the election has been held, or that the fact exists, or has taken place, this will be sufficient evidence of the fact to all *bonâ fide* holders of the bonds.[‡]

2. If there be lawful authority for the municipality to issue

---

[*] Carver *v.* Jackson, 4 Peters, 83.

[†] Fairtitle *v.* Gilbert, 2 Term, 169; Coke Littleton, 363, *b.*

[‡] Authorities, *infra.*

its bonds, the omission of formalities and ceremonies, or the existence of fraud on the part of the agents of the municipality issuing the bonds, cannot be urged against a *bonâ fide* holder seeking to enforce them.[*]

3. There must, however, be an original authority; by statute, to the municipality to issue the bonds. Municipal corporations have not the power, except through the special authority of the legislature, to issue corporate bonds which will bind their towns; neither have they the power to sell or mortgage the lands belonging to such towns without special authority.[†]

The alleged absence of such authority is the basis of the defence to the mortgage sought to be foreclosed in the present action. Four several and distinct grounds on which such power is based are urged by the plaintiffs. But one of these will be examined. The court is satisfied with the authority to be found in the 10th section of the act to incorporate the Mount Vernon Railroad Company. An examination of the others is not necessary.

The town of Mount Vernon is situated in Jefferson County, and some 18 miles easterly of the Illinois Central Railroad. This road passes within a short distance of the westerly line of said county, and nearly parallel with it. Wayne County is still east of Jefferson County, the whole of the latter county lying between Wayne and the Illinois Central road. In the month of February, 1855, the legislature of Illinois passed an act to incorporate the Mount Vernon Railroad Company, for the purpose of building a railroad from Mount Vernon to the Illinois Central Railroad, or to its Chicago branch. The 7th section of the act provided that the company might borrow money and secure the same by bond or mortgage. By the 8th section it was enacted that the county of Jefferson might issue its bonds and provide for the payment thereof by the sale or mortgage of its swamp or

---

[*] Grand Chute *v.* Winegar, 15 Wallace, 355; Commissioners of Knox Co. *v.* Aspinwall, 21 Howard, 539; Gelpcke *v.* Dubuque, 1 Wallace, 203; Moran *v.* Miami County, 2 Black, 722.

[†] Marsh *v.* Fulton County, 10 Wallace, 676.

overflowed lands, or that they might make such other disposition of the lands in aid of the construction and maintenance of the railroad as they deemed best for the public interests of the county.

The 9th section provided that the question of aiding the railroad, and of the mode in which such aid should be given, should be submitted to the decision of the voters of the county.

The 10th section was in the following words:

"Any county through which said road *may* run, and *every* county through which *any other railroad may* run, with which this road *may be joined, connected,* or *intersected, may,* and are hereby *authorized* and *empowered* to *aid* in the *construction* of the *same* or of *such other road* with which it may so connect; and for this purpose the provisions of the seventh, eighth, and ninth sections of this act *shall extend, include,* and be *applicable to every* such county and *every such* railroad."

The provisions of the 7th, 8th, and 9th sections of the charter of the Mount Vernon Railroad Company were thus made applicable to any other county than that of Jefferson, through which that road should run, or through which any other railroad should run, which might join, intersect, or connect with the Mount Vernon road. Such other county was expressly authorized to aid in the construction of the Mount Vernon road, or of such other road with which it might so connect.

No reasonable construction of this act will require that the road to be aided should be actually built before the county was authorized to give it aid. That theory would no doubt add greatly to the security of the county, and would relieve it from many of the perplexing questions which so commonly arise. If, however, the road were actually built, no aid would be needed in its construction. The aid might, in that event, be useful to its stockholders, or might relieve it from embarrassments, but a road which is built can neither need nor receive aid in its construction. That is a fact accomplished. The language of this act expressly authorizes the swamp or overflowed lands to be used

by the counties in aid of the construction of the road, and it seems to be quite plain that the aid was intended to be given before the road was built, and that the counties were expected to take the ordinary risk of the success of the undertaking in which they embarked their property.

The county of Wayne held an election in November, 1858, and voted that these lands should be applied in aid of any company that would build a railroad through the county. Soon after this time Van Duser & Smith entered into a contract with Wayne County for building that part of the road of the Belleville and Fairfield Company lying between the east line of Wayne County and Mount Vernon, thus running across the entire width of Wayne County. This contract was assigned to the Mount Vernon Railroad Company, who undertook the construction of this portion of the road.

The county of Jefferson entered into a like contract for the construction of the Mount Vernon road, from Mount Vernon to the Illinois Central.

It was for the purpose of aiding in the construction of the road thus undertaken to be built by the Mount Vernon Railroad Company from the east line of Wayne County to Mount Vernon, the charter of that company also requiring its road to be built from Mount Vernon to the Illinois Central, that the bonds in question were issued. They were sold under the authority of the county of Wayne, by its agents, and the proceeds were applied as was intended by the county. The Belleville and Fairfield Railroad Company, afterwards changed to the St. Louis and Louisville Railroad Company, was chartered for the construction of a railroad from St. Louis, on the Mississippi, to Mount Carmel, on the Wabash River. Its proposed line crossed the Illinois Central, and was located directly through five different counties, among which was the county of Wayne. It was that portion of the line of this road through the county of Wayne that was located and surveyed by the Mount Vernon Railroad Company and of which the construction was undertaken by that company, as the assignee of Van Duser & Smith.

Some portion of the work had then been done. This brought the county of Wayne within the terms of the 10th section already quoted, and authorized its action in the issue of bonds to aid in its construction.

These were existing contracts, under which the contracting parties were taking efficient measures for the construction of the road. Those contracting parties could make no objection to the power of the counties so to contract. The contracts were valid and obligatory against them, and would be effectual, if carried out, to make the railroad connections needed by the county.

The authority to construct the connecting road, and the entering into a contract for its construction, formed a connection within the meaning of the 10th section.

Such was also the opinion and the assertion of the county of Wayne, when, in November, 1856, it conveyed these lands to Charles Wood, in trust for certain railroads that should build a road through that county.

The deed to Wood recites that a connection had been made between the Mount Vernon road and the others mentioned, that a vote had been taken in the county of Wayne authorizing that deed, and that it was made in pursuance thereof. This deed was recognized and confirmed by the legislature, and expressly declared to be valid in the passage of the act of February 14th, 1857, to amend the charter of the Belleville and Fairfield Railroad Company. The lands were afterwards reconveyed to the county by Mr. Wood.

Holding that there was valid power for the giving of the mortgage in question by the county of Wayne under the 10th section of the Mount Vernon charter, and that there was in fact and in law a sufficient connection with other roads, we do not deem it necessary either to examine the other alleged sources of authority for the execution of the mortgage, or the alleged acts of the county in confirmation of it. Under the circumstances stated, we are also of the opinion that there was a sufficient submission of the question to the voters of the county, and that as against *bonâ fide* holders for value the question is not an open one. It

has been decided at the present term of this court, that where a note secured by a mortgage is transferred to a *bonâ fide* holder for value before maturity, and a bill is filed to foreclose the mortgage, no other or further defences are allowed as against the mortgage than would be allowed were the action brought in a court of law upon the note.[*]

In this action to foreclose the mortgage, the case stands in this respect as it would stand had the present suit been brought directly upon the bonds, and without reference to the mortgage.

The execution of the deed and mortgage by Wilson and Scott, the judges of the county court of Wayne County, and on behalf of the county, was a sufficient execution by the county. In the mortgage and trust deed all the proceedings to authorize a conveyance by the county are recited—the title of the swamp lands in the county through an act of Congress; the authority of the State to dispose of the same by the courts or county judges; the passage of the act incorporating the Mount Vernon Railroad Company—and that the parties of the first part were duly authorized on behalf of the county to make disposition of the land in aid of the construction of the railroad; that the question had been referred to and passed upon by the voters of the county; that, by virtue of all the proceedings recited, the said judges, parties of the first part, had become endowed with power to dispose of the lands; therefore they conveyed, as set forth. This conveyance was, on the 20th of April, 1859, by an order that day entered in its minutes, recognized and confirmed as the act of the county of Wayne by its authorized agents, and by which the lands were mortgaged and conveyed. The 7th section of the Mount Vernon Railroad act, above referred to, vests the power to dispose of these lands in the county court. This body must act by agents, and none can be more suitable and appropriate than the judges of the court. By the 2d section of the act to dispose of swamp and overflowed lands, passed January 22d, 1852, it is provided that in the

---

[*] Carpenter v. Longan, *supra*, p. 271.

cases in the 1st section mentioned, the deed of conveyance shall be made by the judges of the county court as such, and countersigned by the clerk with his official seal. In reference to sales at auction, it is provided by the 11th section that a conveyance shall be executed by "the court, signed in their official capacity," and countersigned by the clerk. The signature of the clerk is nowhere declared to be an absolute prerequisite. In effect this was a conveyance on behalf of the county, by their agents for that purpose duly appointed. By the 7th section of the Mount Vernon charter the county court was authorized to sell or mortgage the lands, or to make such other disposition of them "as they may deem best for the public interest." No mode was pointed out in which a conveyance should be made. No particular signature was made a condition to the validity of the conveyance. There is no ground for the objection to the form here adopted, viz.: by a deed of trust and mortgage, signed by the judges of the county court. In form and in substance the deed was well executed, and valid as the deed of the county.

The objection to the word "bonus" in the proposition submitted to the voters of Wayne County is not valid. This submission, in connection with the general subject of a failure to comply with the requisites prescribed by the statute, has been already discussed. Upon its individual merits we are also of the opinion that the objection is not valid. It is a verbal criticism merely—an objection to the words and not to the substance of the submission. A proposition was submitted to the voters, of which the affirmative was in these words: "For appropriating the swamp lands of Wayne as a bonus to any company for building a railroad through said county." It is said that the word "bonus" condemns the submission; that this word means a gratuity, a voluntary donation, a gift, and that a town or county cannot, although it have the direct authority of the legislature, give away its property. When this question is properly before us it will be disposed of. It does not, however, arise in this case. In the first place, if it be assumed that the word is correctly

defined as a gift, or gratuity, that meaning is controlled and limited by the connection in which it is here used, to wit: that in consideration of it the company receiving the lands will undertake to build a railroad through the county. It is not simply a *bonus*, but a bonus to any company who shall undertake the great task of building a railroad through the county, a task which, it is loudly complained, has not yet been performed by any one.

But, secondly, the meaning of the word bonus is not that given to it by the objection. It is thus defined by Webster: "A premium given for a loan or a charter or other privilege granted to a company; as, the bank paid a *bonus* for its charter; a sum paid in addition to a stated compensation." It is not a gift or gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of that which would ordinarily be given.

Upon the principles announced in the opening of this opinion, the plaintiffs are entitled to a judgment for the amount of the bonds held by them. If we are right in the positions taken, there was indeed no real defence to the bonds.

We think there was error in the decision of the case; that the judgment must be

REVERSED, AND A NEW TRIAL HAD.

Mr. Justice MILLER and Mr. Justice FIELD dissented.

Mr. Justice DAVIS did not sit.