**WRIGHT et al. v. BRUSH et al.**

No. 2086.

Circuit Court of Appeals, Tenth Circuit.

Oct. 26, 1940.

Rehearing Denied Dec. 2, 1940.

Roy C. Davis, of Hutchinson, Kan. (Warren H. White, of Hutchinson, Kan., on the brief), for appellants.

Howard T. Fleeson and Wayne Coulson, both of Wichita, Kan., for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This is an action by Olivia A. Snyder and Eva J. Brush against C. T. Wright and Earl C. King, to recover one-half of a bonus consideration paid C. T. Wright for the execution of a community oil and gas lease by him and Eva J. Brush. Both C. T. Wright and Olivia A. Snyder have died since the commencement of the litigation, and proper substitution of parties has been made. The story will be easier to follow if plaintiffs are referred to as Mrs. Brush and the defendants as Wright.

Olivia A. Snyder, now deceased, was the owner of 15 lots in the unincorporated village of Zenith, Stafford County, Kansas, containing approximately three acres. The townsite of Zenith covered approximately 17 acres of land. On September 10, 1937, she sold these lots to Wright for $1,000, under an agreement in which he agreed to convey to Mrs. Brush, on Royalty Form 111, the undivided one-half interest in all the minerals underlying the real estate, subject, however, to an oil and gas lease he would give to E. C. King, his stepson, in which he would reserve the landowner's one-eighth royalty. After the execution and delivery to King of the oil and gas lease, Wright executed the royalty instrument, conveying to Mrs. Brush the undivided one-half of all oil, gas and other minerals underlying the tract, but not including any part of any bonus for oil and gas leases or rentals or delay money for postponement of development under oil and gas leases. The bonuses and delay rentals were expressly reserved to the grantor. The royalty conveyance further gave to the grantor the right to execute and deliver valid oil and gas leases upon the premises, conditioned only that any such lease must reserve an oil royalty payment of not less than one-eighth to the owners of the real estate.

During April, 1938, J. R. Robertson, president of the Robertson Petroleum Company, opened negotiations with Wright with regard to procuring a lease on this tract. After some negotiations, Robertson agreed to pay Wright $2,500 in cash and to give him an overriding royalty of $\frac{1}{16}$th of the $\frac{7}{8}$ths of all oil produced from wells drilled on the entire townsite of Zenith, under a community lease, to the amount of $10,000, in consideration of the execution of a community lease by Wright and his wife and Mrs. Brush and her husband.

In telephone conversations had by Wright with Mrs. Brush prior to the execution of the community lease, he represented to her that only two wells could be drilled on the townsite; that her interest in the royalty had but slight value; that no consideration was being paid for the community lease other than $1; that she was receiving exactly the same consideration for signing the lease as he was; and that no development could be had on her separate tract. Relying upon these representations, Mrs. Brush told him that if it was necessary to sign a community lease in order to secure development, she was willing to take her chance with the others, and accordingly executed the lease. The community lease was signed by the owners of all the real estate in the townsite of Zenith and reserved $\frac{1}{8}$th of the oil and gas produced on the premises to them to be distributed to each according to the ratio that their respective acreages bore to the entire acreage. After the execution of the community oil and gas lease, the overriding royalty in the $\frac{7}{8}$ths working interest was executed and delivered to Wright, providing for the payment to him of the sum of $10,000.

Upon learning the true facts, Olivia A. Snyder and Mrs. Brush instituted this action, seeking to recover as co-tenants one-half of the $2,500 paid in cash to Wright, and asking for a decree directing a transfer to them of a one-half interest in and to the overriding royalty conveyed by Robertson to Wright. At the conclusion of a trial to the court, extensive findings of fact and conclusions of law were made and judgment was entered for Mrs. Brush, providing that she recover from Wright $1,250 and interest, and that he assign to her an undivided one-half interest in and to the overriding royalty and account to her for one-half of all royalties paid or received from the overriding royalty. From this judgment an appeal has been taken to this court.

The theory upon which the trial court based its decision was that Wright occupied a position of trust and confidence toward Mrs. Brush; that the duty rested upon him to make full disclosure of all material information relating to any proposed oil and gas lease; that the misrepresentations made by him violated this trust relationship, and that therefore plaintiff was entitled to recover one-half of the $2,500 paid for the execution of the community lease by Wright and Brush, and one-half of the $10,000 to be paid from ⅟₁₆th of the lessee's ⅞ths of the oil.

■ It is not necessary to determine whether a trust relationship existed, because in any event Wright stands convicted of such open, gross and flagrant misrepresentations which induced Mrs. Brush to execute the community lease that she could recover any loss suffered even if she were a stranger. However, before she may recover, she must not only establish that the representations were false and material, but also that as a result thereof she suffered the claimed loss.

Mrs. Brush's right to the relief which she seeks must be determined by an interpretation of Royalty Form 111. Under this instrument she received an undivided one-half interest in all the oil and gas under and that may be produced from the described premises, but no part of any bonus for oil and gas leases or rentals or delay money for postponement of development under oil and gas leases, all of which was expressly reserved to Wright.

■ While the terms "royalty," "overriding royalty," and "bonus" are sometimes loosely used, they have a well defined and generally understood and accepted meaning. The ordinary and legal meaning of the word "royalty" as applied to an existing oil and gas lease is the compensation provided in the lease to the owner of the premises for the privilege of drilling and producing oil and gas therefrom, and consists of a share in the oil and gas produced. Bellport v. Harrison, 123 Kan. 310, 255 P. 52. An "overriding royalty" is generally defined as an interest carved out of the lessee's share of the oil, also called the working interest, as distinguished from the owner's interest or royalty interest. Robinson et al. v. Jones, 119 Kan. 609, 240 P. 957. A "bonus" is a consideration in addition to or in excess of that which would ordinarily be given. Payne v. United States, 50 App.D.C. 219, 269 F. 871; Kenicott v. Wayne County, 16 Wall. 452, 83 U. S. 452, 21 L.Ed. 319. In many instances where leases have considerable value, one seeking a lease from an owner is willing to pay in addition to the usual royalty reserved in the lease, something more. This is called a bonus. It has been defined as a consideration for the lease over and above the usual royalty reservation, and it is immaterial whether the additional consideration is paid in money or out of oil, so long as it does not come out of the usual and ordinary royalty reservation to the landowner. Sheppard v. Stanolind Oil & Gas Co., Tex.Civ.App., 125 S.W.2d 643.

■ The $2,500 and the overriding royalty were bonuses for the execution of the community lease. The misrepresentations of Wright which induced Mrs. Brush to execute the community oil and gas lease did not entitle her to share in these bonuses because the instrument under which she acquired her interest in this property expressly excluded her from participation in any bonus paid for the execution of a lease.

■ While Mrs. Brush is not entitled to the relief she seeks, it does not follow that the complaint fails to state a cause of action. Allegations of damages are essential in a bill of complaint, but they do not constitute the cause of action. United States v. Standard Oil Co. of California, D.C.Cal., 21 F.Supp. 645, 660; Nester v. Western Union Telegraph Co., D.C.Cal., 25 F.Supp. 478; Panhard Oil Corp. v. Societe Anonyme Des Anciens, etc., Cust. & Pat.App., 39 F.2d 496; Dennison v. Payne, 2 Cir., 293 F. 333.

268

■ The spirit of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is to simplify procedure. They speak of claims for relief and not causes of action. They provide for only one form of action. Rule 8 requires that the pleader file a short and plain statement of the claim, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled.

■ Mrs. Brush was the owner of one-half of the oil and gas in place. Wright was given the power to execute oil and gas leases without her signature, but was required to reserve to the owners a ⅛th royalty. Under an ordinary lease, Mrs. Brush would be entitled to receive ½ of the ⅛th royalty. There is evidence that other oil companies were willing to drill on this tract. Wright told Robertson that other companies were willing to drill. To procure her signature to the community lease, he falsely represented to Mrs. Brush that no drilling agreement could be procured on this tract alone. He also misrepresented the value of the lease. Through these false representations he induced her to execute a community lease, whereby she surrendered a part of that which she would have received under an ordinary lease. Here, damage is the difference between what she will receive under the community lease and what she would have received under an ordinary lease.

The judgment is reversed and the cause is remanded, with instructions to grant a new trial.