**Charles J. BRENIMER and James R. Brenimer, Executors of the Estate of C. J. Abrams, Deceased, and W. K. McGlothlin, Appellants,**

v.

**M. B. COCKBURN, R. T. Goldsworthy, Harold L. Baker, A. F. Goldsworthy, Grant H. Bagley and R. S. Fox, Appellees.**

No. 5658.

United States Court of Appeals
Tenth Circuit.

April 24, 1958.

Richard S. Kitchen, Denver, Colo. (Dawson, Nagel, Sherman & Howard, and Raymond J. Turner, Denver, Colo., were with him on the brief), for appellants.

Harry H. Ruston, Denver, Colo., for appellee R. S. Fox.

John U. Loomis, of Loomis, Lazear & Wilson, Cheyenne, Wyo., and Grant H. Bagley, of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, submitted a brief for appellees other than R. S. Fox.

Before BRATTON, Chief Judge, PICKETT, Circuit Judge, and RICE, District Judge.

PICKETT, Circuit Judge.

Plaintiffs brought this action for an adjudication that their interest in oil and gas produced from leased lands located in Big Horn County, Wyoming, was in the nature of an overriding royalty. All the defendants except Fox[1] had acquired a 50% working interest in the leases, and were obligated to develop the same. While in the process of drilling a well on the leased premises, Cockburn, et al., for a cash payment of $8,000 each, conveyed to McGlothlin and Abrams,[2] by separate assignment, an interest in the oil and gas produced. The assignments were identical, and in the following language:

> "In consideration of the sum of $10.00 and other good and valuable considerations R. T. Goldsworthy,

---

1. Defendants Cockburn, R. T. Goldsworthy, Baker, A. F. Goldsworthy, and Bagley, will be referred to herein as "Cockburn, et al."

2. Subsequent to the delivery of the assign-

ments, C. J. Abrams died, and the plaintiffs Charles J. Brenimer and James R. Brenimer, as Executors of his estate, joined with McGlothlin in bringing this action.

Herald L. Baker, A. F. Goldsworthy, M. B. Cockburn, and Grant H. Bagley, Grantors, hereby sell, assign, transfer and convey to C. J. Abrams [W. K. McGlothlin] one percent (1%) of all the oil and gas hereafter developed or discovered in the lands located in Big Horn County, Wyoming, particularly described in the oil and gas leases issued by the United States listed on Exhibit 'A' attached hereto and made a part hereof, pursuant to the Operating Agreement dated the 10th day of March, 1953, wherein L. J. Peterson and E. S. Cassidy are first parties and M. B. Cockburn is second party, or any other operating agreement hereafter made or entered into by the Grantors or any of them relating to the development of said lands or any part thereof for oil and/or gas.

"Grantors warrant that said M. B. Cockburn will perform completely each and every term, provision and condition of the Operating Agreement dated the 10th day of March, 1953, to be by him performed."

Thereafter the defendant Fox acquired the Cockburn, et al., interest, with knowledge of the Abram and McGlothlin assignments.[3] The trial court concluded that the plaintiffs did not obtain by the respective conveyances an overriding royalty interest in the oil and gas produced from the leased premises, free and clear of the costs of production, but that they obtained only a fractional share of the working interest held by Cockburn, et al., with the burden of a proportionate share of the cost of production.

The plaintiffs challenge the judgment on the ground that the language of the assignments is unambiguous, and that as a matter of law, the instruments grant and convey to each of them an overriding royalty of 1% in all the oil and gas produced from the leased premises, with no obligation to contribute to the cost of production.[4] It is conceded that the first clause of the so-called "assignment and conveyance" is in language customarily used to convey an overriding royalty interest. It is contended, however, that the "pursuant to" clause which follows, limits the effect of the preceding clause so as to convey only a 1% interest in what Cockburn, et al., owned. We find no such significance in the "pursuant to" clause. It only describes the origin of the assigned interest, which was in the working agreement with Peterson and Cassidy.[5] It limits the assigned interest to production under the provisions of that working agreement, or any other agreement which Cockburn, et al., might make for the development of the property. There is nothing in the language which could be construed as requiring, or even permitting, Abrams and McGlothlin to perform the operating agreement or pay any of the costs thereof. To protect the assignees against a forfeiture of the working agreement through which their rights originated, Cockburn, et al., war-

3. The court found: "That R. S. Fox had actual or constructive notice at the time he accepted the 50% interest assignment; that C. J. Abrams and W. K. McGlothlin were owners of a 2% interest in and to said leasehold. That he can not now be heard to complain that he was a purchaser without notice of said 2% outstanding interest." There is substantial evidence to support this finding.

4. Plaintiffs state in their brief that "The only question properly before the Court is the construction of Plaintiffs' Exhibits 1 and 2 which are identical. If they create overriding royalty interests the judgment should be reversed. If they create working interests the judgment should be affirmed."

5. Wycol Petroleum Company owned the oil and gas leases issued by the United States. Peterson and Cassidy entered into a working agreement with Wycol, whereby they acquired a 75% interest in the leases and were required to develop the same. Cockburn executed an agreement with Peterson and Cassidy whereby he assumed their development obligations for a 50% interest. The interest created by this agreement was divided equally among the five members of the Cockburn, et al. group.

ranted that Cockburn would perform completely each and every term, provision and condition of his operating agreement, and this clause negatives any requirement on the part of the assignees for such performance.

The trial court seemed to be of the view that the working interest agreement held by Cockburn, et al., was of such a nature that they could not assign or convey anything except an interest therein. But clearly, an overriding royalty may be carved out of a working interest in an oil and gas lease, and satisfied out of the oil attributed to that working interest. Oldland v. Gray, 10 Cir., 179 F.2d 408, certiorari denied 339 U.S. 948, 70 S.Ct. 803, 94 L.Ed. 1362; Phillips Petroleum Co. v. Oldland, 10 Cir., 187 F.2d 780, certiorari denied 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617; Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971; Wright v. Brush, 10 Cir., 115 F.2d 265; Cities Service Oil Co. v. Geolograph Co., 208 Okl. 179, 254 P.2d 775; Halbert v. Hendrix, 121 Ind.App. 43, 95 N.E.2d 221; Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53. See also Summers, Oil and Gas, Vol. 3, §§ 554, §§ 555. Cockburn, et al., through their operating agreement, owned a 50% working interest in the production from the leasehold. Out of this interest, they could assign and convey an overriding royalty. Summers, Oil and Gas, Vol. 3, § 556; Wright v. Brush, supra.

We conclude from the unambiguous language of the assignments, giving the words their ordinary meaning, that Cockburn, et al., conveyed to Abrams and McGlothlin each, a 1% overriding royalty in all of the oil and gas produced from the leasehold under the provisions of the working agreement, or other agreements made pursuant thereto, free from any cost of production.

The judgment is reversed and the cause remanded, with instructions to enter judgment for the plaintiffs in accordance with the views herein expressed.