# WHEELER v. CLOYD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

No. 147. Argued December 6, 1889. — Decided April 7, 1890.

*Gibson* v. *Shufeldt,* 122 U. S. 27, affirmed to the point that "in a suit in equity brought in the Circuit Court by two or more persons on several and distinct demands, the defendant can appeal to this court as to those plaintiffs only, to each of whom more than $5000 is decreed."

MOTION TO DISMISS an appeal in equity upon the ground that "the decree appealed from was not a joint decree, and imposed no joint debt, liability or obligation," but that it was a series of distinct decrees against distinct parties, on distinct causes of action. The case is stated in the opinion. The cause was argued on its merits as well as on the motion to dismiss.

*Mr. H. Tompkins,* for appellants, (*Mr. James McCartney* and *Mr. T. J. Golden* were with him on the brief,) made the following points in opposing the motion to dismiss. These are the points referred to by the court.

This is an attempt, by supplemental bill, to reopen a part of the subject matter of an original suit of foreclosure by and against new parties alleging over $1,000,000 as the matter in dispute, and that appellants were not, but should have been parties to the original suit: a matter which was open and notoriously known when the original suit was brought. By this proceeding it is sought to foreclose 100,000 acres in parcels of 40 acres, the value of each parcel being less than $500. The gravamen of the action and decree is to enjoin, annul, ignore and render void proceedings in the courts of the State of Illinois, had before this proceeding was commenced.

The whole proceeding is in violation of Rev. Stat. § 723, and the Circuit Court had no jurisdiction. An appeal lies, as the jurisdiction of the court below is a proper subject for re-

view. *Dred Scott* v. *Sandford*, 19 How. 393; *Grignon* v. *Astor*, 2 How. 319.

Parties cannot join to give jurisdiction. *Oliver* v. *Alexander*, 6 Pet. 143; *Spear* v. *Place*, 11 How. 522. Each complainant must be able to sue each defendant. *Rich* v. *Lambert*, 12 How. 347; *Strawbridge* v. *Curtiss*, 3 Cranch, 257; *Paving Co.* v. *Mulford*, 100 U. S. 147. And when the record shows, as this record does show, that the Circuit Court was without jurisdiction, this court will remand the case with directions to dismiss it for want of jurisdiction.

The Revised Statutes provide, § 723, that suits in equity shall not be entertained in the courts of the United States in any cause where a plain and adequate remedy at law may be had. In this cause the plaintiffs had their full and adequate remedies at law, and the court, as a court of equity, was consequently without jurisdiction.

An appeal lies in the case at bar, as the gravamen of appellee's action is to enjoin the Supreme Court of the State of Illinois against further proceedings, as alleged by appellees in the case of *Scates* v. *King*, until the appellees can foreclose in this court the 100,000 acres, or so much as each appellee may desire.

If the action is to foreclose, then it is *in solido* for the whole debt.

By "matter in dispute" is meant the subject of litigation. The matter for which suit is brought, and on which issue is joined. The matter in dispute is the debt claimed, not the damages or prayer for judgment. *Rich* v. *Lambert*, 12 How. 347, 352; *Lee* v. *Watson*, 1 Wall. 337; *Wilson* v. *Daniel*, 3 Dall. 401, 408.

"Purchasers of the equity of redemption, to redeem must pay the whole debt." There can be no severance until the debt is paid, or foreclosed, under a legal proceeding. Jones on Mortgages, §§ 1063, 1070, 1075; Powell on Mortgages, 342; *Bradley* v. *Snyder*, 14 Illinois, 263; *S. C.* 58 Am. Dec. 564; *Meacham* v. *Steele*, 93 Illinois, 135.

Equity of redemption, under the statute, is a privilege to be exercised within a limited time. The case at bar seeks, by

supplemental proceedings, to compel a redemption, against parties who have not been foreclosed, by subrogation to the rights of the original parties, claiming an equity by the deraignment of title, under a void foreclosure.

A supplemental bill to a foreclosure suit, alleging the equity of deeds by a deraignment through purchase at a master's sale, praying to be subrogated and have a foreclosure against parties in possession through purchase from the so-called mortgagor before the foreclosure suit was commenced, opens up the whole case, and all previous decrees and orders are vacated, that the original suit may be heard at the same time; and all parties must be brought in. *Gibson* v. *Rees*, 50 Illinois, 383.

*Mr. Lucien Birdseye* and *Mr. Edwin Beecher* for appellees, and in support of the motion.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was a motion to dismiss an appeal upon the ground that the interests of each of the appellants in the case are separate and distinct, and do not involve an amount sufficient to give this court jurisdiction.

The case grew out of *Kenicott* v. *Supervisors*, 16 Wall. 452, and *Supervisors* v. *Kennicott*, 94 U. S. 498; and those cases are referred to for a more minute statement of all the early facts of the controversy than is necessary to be made for the purpose of considering the question now before us. A brief summary of some of the leading facts of the controversy will be sufficient for present purposes.

On the 20th of April, 1859, the county of Wayne in the State of Illinois, by virtue of an authority derived from an act of the state legislature, executed a mortgage and a deed of trust upon about 100,000 acres of its swamp and overflowed lands, to Isaac Seymour of New York City, as trustee, to secure the payment of $800,000 of its bonds, which had been issued for the purpose of raising funds with which to construct a railroad. On the same day the Mount Vernon Railroad Company, the corporation that had been organized to build the

road for the benefit of which the aforesaid aid had been granted, as a part of the same general transaction of raising funds with which to build its road, executed a mortgage to Seymour, upon its contemplated railroad, its appurtenances, franchises and other property and effects both present and prospective, as an additional security for the aforesaid bonds. The bonds were sold and came into the hands of *bona fide* purchasers for value, and default having been made in the payment of the interest on them, as it came due, a bill for foreclosure of the mortgages and deed of trust was filed, on the 7th of March, 1865, by John W. Kennicott and others, claimants of a number of the bonds which had been sold, against the county of Wayne and the Mount Vernon Railroad Company. The railroad company defaulted, and, upon a hearing in the Circuit Court of the United States for the Southern District of Illinois, the bill was dismissed as to the county of Wayne, on the ground that the mortgage was invalid because the proofs failed to show that at the date it was made there was any line of railroad constructed or authorized to be constructed through that county, with which the Mount Vernon railroad was connected in any manner. Upon appeal, this court reversed that decree, and held that the mortgage in controversy was valid, as to *bona fide* holders of the bonds it was intended to secure, and that the complainants were entitled to a decree in their favor. *Kenicott* v. *Supervisors, supra.* A final decree in the case was rendered by the Circuit Court in June, 1874, which was affirmed by this court on appeal. *Supervisors* v. *Kennicott, supra.* In pursuance of that decree the lands covered by the mortgage were sold at a master's sale on the 18th of September, 1877, for an amount insufficient to satisfy the claims of the bondholders, and, the time for redemption having expired, the master, on May 27, 1879, executed and delivered a deed for them to one Broadwell, who had come into possession of the certificates of purchase at the aforesaid sale. The appellees in this case, who were complainants below, claim under Broadwell.

Between the date of the execution of the deed of trust and the mortgage before mentioned, and March 7, 1865, when the

foreclosure suit was commenced, the county of Wayne had sold a large amount of the lands embraced in those encumbrances to individuals who were not made parties to the foreclosure proceedings. The appellants here claim under those purchases from the county.

The case, as it now stands, is a consolidation of four others and an intervening petition filed by leave of the court. The first of those consolidated cases was a suit in equity brought on the 25th of January, 1882, by the appellee, J. C. Cloyd, a citizen of New York, against Clarissa Jordan and some twenty-four or more other defendants, all but two of whom were citizens of Illinois, one of those two being a citizen of Ohio, and the other a citizen of Colorado. The bill set out, somewhat in detail, the various steps in the proceedings above referred to, and further alleged that, by reason thereof and also by reason of the conveyances before mentioned, the county of Wayne had no right, title or interest in and to the lands in dispute and was not in any other manner interested in the present suit.

The prayer of the bill was that a subpœna issue commanding each of the defendants to appear and answer, but not under oath, all and singular the allegations of the bill; that an account be taken, under the direction of the court, to ascertain how much was due on the decree in the case of *Kenicott* v. *Supervisors, supra,* and also to ascertain the amount for which each tract of land involved in the suit was sold at the master's sale, with interest. It then continued as follows: "That said defendants, within a short time to be fixed by this court, pay to complainant the amount so found to be due on said decree, or, in the alternative, that each of said defendants pay to your orator the amount for which the lands so claimed by each of said defendants was sold for at said master's sale, with the interest thereon, and in default of making such payment that your honor, by a decree of this court, declare the equity of redemption of said defendants be forever barred and foreclosed; and if your honor should deem it right and equitable that the equity of redemption of said defendants in and to said premises should be sold, then that your honor order the

same to be sold in such manner as may seem best to your honor;" and concluded with a prayer for other and further relief, etc.

The second and third of the consolidated cases were brought on the same day as the first one, in the court below, and were similar in every respect to that one. The second one was brought by C. T. Austin, a citizen of New York, against Michael Book and four other defendants, all citizens of Illinois: and the third one was brought by John B. Cornell, also a citizen of New York, against Thomas J. Pettijohn and some fifty-five or more other defendants, all of whom were citizens of Illinois, except C. M. Wakefield, who was a citizen of Texas.

The fourth one was brought in the court below on the 26th of January, 1882, by Elizabeth H. Taylor, J. Sargent Smith and Arthur F. Gould, citizens of Massachusetts; Henry M. Alexander, administrator of the last will and testament of Peter McMartin, deceased, Joseph Waxelbaum and Charles A. Coe, citizens of New York; and William L. Rolston, a citizen of Ohio; against J. B. Bozarth and sixty-five other defendants, who were all citizens of Illinois; and was similar to the three preceding cases in every respect, except that the lands involved were described, and the name of the owner of each particular tract was set forth in the bill itself, instead of in an exhibit thereto, as was the case in the others.

These cases were consolidated by an order of court entered January 2, 1884, and were ordered to proceed as one case, under the title of the first one; and at the same time leave was given to amend the bills in all of the causes in order to make them harmonious.

By leave of the court, on the 4th day of April, 1884, Fernando B. Hane, a citizen of Ohio, filed his intervening petition in the case, as consolidated, against all of the defendants impleaded therein, and also against John J. Backman and one hundred and seventy-four other defendants, all citizens of Illinois, alleging substantially the same facts as did the preceding cases, with a like prayer and with an additional prayer for an injunction against a number of the defendants and their attorney, H. Tompkins, to restrain and enjoin them from

prosecuting certain suits brought by them in the Circuit Court of Wayne County against certain vendees of petitioner based upon the claim that the aforesaid mortgage and deed of trust were invalid, and, therefore, not binding upon them, until the final hearing of this cause.

To these pleadings various defendants interposed demurrers, some filed separate answers, and the rest filed a joint answer. The main ground of defence was, that upon a similar state of facts to those alleged by complainants in this case the Supreme Court of Illinois, in *Scates* v. *King,* 110 Illinois, 456, had affirmed a decree rendered by the Circuit Court of Wayne County in a case regularly brought before it, which held that a conveyance of a part of the lands sold at the mortgage sale aforesaid, made by a claimant under Broadwell, was a cloud upon the title thereto of a party claiming under a sale made by the county between the date of the execution of the before-mentioned mortgage and deed of trust and the commencement of the foreclosure proceedings, and should be set aside.

Replications having been filed, and also intervening petitions by W. S. Rolston, J. C. Cloyd and Lucinda A. Walker, the case was finally put at issue. Proofs were taken by the respective parties, and, upon a hearing on the pleadings and proofs, the court below, on the 25th of January, 1886, rendered a decree finding the material facts substantially as we have recited them. The decree then set out and exhibited, in its seventh finding of facts, a list and schedule of the lands involved in this consolidated suit, " together with the names, respectively, of the several and respective persons to whom the county of Wayne sold its equity of redemption or residuary interest." That list and schedule further contained a statement of the present owners, respectively, of the title acquired by the master's sale aforesaid, which afterwards passed to Broadwell and from him by mesne conveyances; and also " a statement of the amounts, respectively, which were bid at said decretal sale for said tracts of land respectively."

The court then found as matter of law :

" 1. That the opinions and decisions of the Supreme Court of the United States upon the appeals heretofore prosecuted

from the decrees of this court and reported in 16th Wallace's Reports, page 452, and in 94 U. S. Reports, page 498, are binding upon this court, and there is nothing in record or evidence in this case as consolidated to invalidate the said mortgage and trust deed or the respective amounts found due to the several parties to this suit as consolidated. Both the findings as to the said several amounts so found due should be sustained.

"2. The purchasers from Wayne County, after the recording of the mortgage, took the lands purchased by them severally subject to the lien of the mortgage, and the proceedings to foreclose the said trust deed and mortgage did not release or discharge this lien so long as the mortgage debt remains unsatisfied.

"3. The purchasers from the county, both after the recording of the mortgage and after the service of process on Wayne County on March 11, 1865, cannot acquire tax titles as against the mortgagees or those acquiring title under the foreclosure sale.

"4. That the master's deed under the decretal sale of September 18, 1877, transferred to the several purchasers thereat an equitable right to so much of the mortgage debt as was bid upon each tract severally.

"5. That the *lis pendens* as to purchasers from the county attaches from the 11th of March, A.D. 1865, the date of service of process on Wayne County, and that upon the facts averred in the several bills and sustained by the proofs the purchasers of lands at the decretal sale which were sold by Wayne County between April 20, 1859, and March 11, 1865, are entitled to file a bill in the nature of a supplemental bill against the parties holding title from the county subject to the mortgage to have the lien of the mortgage enforced by a decree of foreclosure."

The decree then continued as follows:

"That each of said owners of the said equity of redemption or residuary interest of the county of Wayne of, in and to said several tracts of land which were purchased from the

county between April 20, 1859, and March 11, 1865, who have been summoned in this case, or who may have entered their voluntary appearance therein, or their assigns, respectively, *each acting for himself or herself, and not for any other, may and shall redeem the respective tracts of land of which they, at date of service upon them, respectively, of process or entry of appearance, respectively, held and owned the equity of redemption or residuary interest of the county of Wayne* within or at the expiration of one year from this date, by paying into this court the amount for which each of said tracts of land was bid and sold at said decretal sale, for the use and benefit of the owners, respectively, under title deraigned from said decretal sale of the tract or tracts so redeemed, and that the judgment creditors, respectively, of any such persons so owning the equity of redemption may and shall redeem any tracts thereof in default of such parties so redeeming, at any time within three months of and after the expiration of said twelve months, by paying the amount so decreed to be redeemed from, in accordance with the statutes of the State of Illinois concerning redemption from judicial sales; and it is further ordered, adjudged and decreed that the decree of foreclosure of June 25, 1874, hereinbefore referred to, shall be vacated and annulled as to each and every tract (but as to none others) thus redeemed as aforesaid, and that in default of redemption, as provided for herein as aforesaid, then and from the date of the expiration of such period of limitation all rights of such owners of the said equity of redemption, or their respective assigns, so failing to redeem shall be forever barred and foreclosed of their equities of redemption, respectively, and of all rights of, in and to said lands of any kind or nature adversely to the owners under title deraigned from said decretal sale, and that each and all of such defendants so being barred and foreclosed, and their agents, attorneys, solicitors and servants or assigns shall, from and after the expiration of said fifteen months, cease to exercise any acts of ownership over said lands, and shall at once thereafter vacate, abandon and leave the same, and not intermeddle any further therewith under pain of being considered in contempt of this court, and that

the respective titles of said several and respective tracts of land not so redeemed shall be, and they are, confirmed in said several parties so owning the same by title deraigned from said decretal sale, as aforesaid, and their assigns, and that any tax deed or certificate to any tract of land, and not thus ·redeemed, which may belong to any such person .thus entitled, but failing to redeem such tract, is hereby declared to be vacated, annulled, and for nothing taken hereafter." The italics are the court's.

On the same day that the decree was entered·a motion for rehearing was filed, the first ground of which recited as follows : "That the result of the decree in said cause would be a great hardship to the respondents, as there is not enough in amount in any case to allow an appeal." This motion was denied on the 29th of March, 1886, but on the 31st of May following it was ordered by the court that said motion "stand continued until the next June term" of the court. On the 10th of June following the motion for rehearing was again considered, and again denied, an order being entered "that the order of March 29th, 1886, denying the application for a rehearing of the cause, stand affirmed."

On the 13th of July, 1886, a motion was made to correct the decree by striking from it the names of thirty-seven of the defendants, thirty-four of whom, it was alleged, had neither entered their appearance nor been served with summons, and the other three had disclaimed; and on the 5th of August, 1886, a petition for summons and severance on appeal, and also an appeal bond, were filed by fifty-six of the defendants jointly.

It is clear that the appeal must be dismissed. The decree from which it is taken was not a joint decree, as is readily observed by a mere inspection of it. The liability of each one of the defendants under that decree can be neither increased nor diminished by any action on the part of any of his co-defendants. The right of every one of the defendants to appeal from the decree is separate and distinct from that of the other defendants. The amount adjudged against any one of them, in order that he might redeem his respective tract or tracts of

land, does not in any case reach the amount necessary to give us jurisdiction to entertain the appeal. In no case is it $5000.

In *Ex parte Phœnix Insurance Co.*, 117 U. S. 367, 369, Chief Justice Waite, delivering the opinion of the court, said: "The rule is well settled that distinct decrees against distinct parties on distinct causes of action, or on a single cause of action in which there are distinct liabilities, cannot be joined to give this court jurisdiction on appeal;" citing a long list of authorities. The question was finally put at rest in *Gibson* v. *Shufeldt*, 122 U. S. 27, where, after a thorough examination of the subject, on principle, and an exhaustive review of the authorities bearing upon it, the court sustained a motion to dismiss an appeal similar in all its essential features to the motion in this case, and in concluding its opinion said: " This result, as we have seen, is in accordance with a long series of decisions of this court, extending over more than half a century. During that period Congress has often legislated on the subject of our appellate jurisdiction, without changing the phraseology which had received judicial construction. The court should not now unsettle a rule so long established and recognized." (pp. 39, 40.) See, also, *McMurray* v. *Moran*, at this term, *ante*, 150.

It is not necessary to multiply authorities upon a point so well settled. Neither do we think any of the points made by the appellants, in their brief, in opposition to the motion to dismiss, are well taken.

*The motion to dismiss the appeal is granted.*