JOHNSON, Respondent, vs. FULLER & JOHNSON MANUFACTURING COMPANY, Appellant.

*January 19—February 12, 1924.*

*Master and servant: Award of War Labor Board: Interpretation: Computation of back pay: Credit to employer: Money paid as bonus for services: As premium for extraordinary effort.*

1. An award of the War Labor Board, handed down after a hearing on an arbitration agreement entered into between the defendant employer and its employees, is interpreted to recognize wage agreements existing at the time of the submission to arbitration, and not to change any wage in excess of the minimum fixed by the award. p. 77.

2. Where an employer pays a bonus to an employee he has in view a benefit accruing to him, consisting of an inducement to continuous service and of loyalty on the part of the employee; and the employee does not receive the bonus as a gift but as a part of his wage.  p. 79.

3. An award of the War Labor Board providing for back pay to the employees of a corporation having limited the computation thereof to the flat hourly wage received by the employee, and having expressly excluded a bonus which had been paid in determining the amount of the back pay, the corporation was entitled to credit the amount of bonus actually paid on the amount of back pay ascertained, the bonus having been paid in consideration of services actually rendered by the employee.  p. 79.

4. Such award having expressly excluded premiums from consideration in determining the amount of back pay due, the employer could not offset against the back pay the amount of premiums actually earned and paid, the "premiums" consisting of part of the value created for the employer because of the extraordinary services of the employee.  p. 79.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed, with directions.*

This is an appeal by the defendant from a judgment in favor of the plaintiff for the sum of $544.54 damages and costs.

The defendant is a corporation engaged in the manufacture of internal-combustion engines in the city of Madison, and at all times referred to herein employed a large force of skilled and unskilled labor. In the spring of 1918 the employees of the defendant became unionized, and appointed a committee to interview the defendant in order to obtain certain concessions, among which were a classification of employees similar to that obtaining in the Great Lakes Ship Yards, a minimum rate of hourly wage for each class, an eight-hour day, with extra pay for overtime, and double pay for Sundays and certain holidays, additional compensation for night shifts, collective bargaining, abolition of the bonus and premium system, etc. These demands were made at a time when the World War was at its height, while labor

was scarce, and when, in accordance with the governmental policy, it was highly desirable that production continue at its maximum. The employees having threatened to strike, and such fact having come to the knowledge of the War Labor Board, such board intervened, and through its efforts the employer and employees entered into an arbitration agreement, in which agreement, among other things, is recited the necessity for the continuance of the maximum production for the successful prosecution of the war, and that the matters in dispute be submitted to the board, and that its decision be retroactive to August 1, 1918. Thereafter the board met in the city of Madison and proceeded to examine into the situation, heard evidence with respect to labor conditions in said city generally, the cost of living, housing conditions, the wages paid by the defendant to its employees, the character of the labor employed by it, the relations of the employer to the employees, the hours of labor, and in a general way considered all the demands of the employees of the defendant as above formulated.

The award of the Labor Board was not handed down until February, 1919, and thereafter an application was made by the defendant for a rehearing, which rehearing was not determined until some time in the month of April, 1919. During the period between August 1, 1918, and April 1, 1919, the employees of the defendant remained at work under the agreements prevailing on August 1, 1918, as modified from time to time up to April 1, 1919. From the spring of 1918 the defendant, in addition to the hourly wage, also paid a monthly bonus of ten per cent. to its employees, which bonus, however, was forfeited by the employee if he left his employ before the end of the month. Prior to August 1, 1918, and during the period intervening between said date and April 1, 1919, certain of the employees worked under what is known as a premium system, which is described by the War Labor Board in its award as follows:

"The individual is employed at a basic rate agreed to, and to this is added the premium which he makes at his work.

Johnson v. Fuller & Johnson Mfg. Co. 183 Wis. 68.

The basis is established by determining the time in which an ordinary workman can perform a certain piece of work, and dividing equally the time saved by the individual upon that work during the hours of employment."

This premium system can be illustrated as follows: After determining that an ordinary skilful employee can perform a certain job in eight hours, the employee working under this system, if he completes the job in six hours, receives pay for six hours' work according to the established hourly rate, and, for the two hours saved, one half of the amount is paid to the employee and the other half to the employer, so that the employee would receive extra pay for one hour, and the benefit of the other hour would go to the employer.

The award of the Labor Board, omitting certain preliminary recitals, is as follows:

"1. *Wages.* The minimum rate of hourly wages to be paid the employees of this company who are over twenty-one years of age, and have been employed by the company more than six months, shall be forty cents on the basis of an eight-hour day. This shall not be construed so as to reduce any hourly rate received by any employee on August 1, 1918, taking into account the minima herein prescribed and including any increases granted since that date. Provision may be made, however, for pensioners, *i. e.* old or disabled employees. If women are employed, the minimum rate of hourly wages to those who are over twenty-one years of age, and have been employed by the company for more than six months, shall be thirty-five cents, on the basis of an eight-hour day. Women employees must be allotted equal pay with men for equal work, and must not be allotted tasks disproportionate to their strength.

"2. *Hours of work and overtime rate.* Eight hours shall constitute a day's work. Time in excess of eight hours shall be paid for at one and one-half the hourly rate, based on what the employee was receiving on August 1, 1918, taking into account the minima herein prescribed and including any increases granted since that date. Work performed on Sundays and those holidays fixed by the statutes of Wisconsin shall be paid for at double the hourly rate, based on what the employee received on August 1, 1918, taking into

account the minima herein prescribed and including any increases granted since that date.

"3. *Night work.* Those employees employed on the night shift shall receive five per cent. higher rates than those similarly employed on the day shift.

"4. *Committees.* The right of workers to organize in trade unions, and to bargain collectively through their chosen representatives, is recognized and affirmed. The workers shall have free choice in the selection of committees to represent them, and the employer shall meet with the committees of his own employees for the purpose of adjusting any grievances that may arise.

"5. *Discrimination.* There shall be no discrimination by employers against employees for membership in a labor union, or for legitimate trade union activities.

"6. *Premium system.* The premium system now prevailing in the plant of this company shall be abolished.

"7. *Period of award.* This award shall take effect as of August 1, 1918, and shall continue in effect for the period of the war. The employer may have until April 1, 1919, to make payments to employees of back pay, if any, due them under this award.

"8. *Administration of the award.* Should any difficulties arise in the application of this award they shall, if possible, be determined by the parties in dispute through conference and, if unable to thus settle such controversies, they shall be referred to the National War Labor Board for adjustment.

"Feb. 17, 1919.      (Signed)  C. C. McCHORD, Umpire."

On or about the 1st of April, 1919, the employees in substance made demands upon the employer similar to those which were made in the spring of 1918, and attempted to negotiate by their committee with the defendant, and, upon the refusal of the defendant to accede to such demands, proceeded to strike.

Difficulties arose also between the parties with respect to the correct interpretation of the award, and thereupon, on the 25th day of April, 1919, the representatives of the employees, through one Huybrecht, addressed the following

night lettergram to the secretary of the National War Labor Board:

"W. Jett Lauck,　　　　　　　　Madison, Wis., April 25, 1919.
　　　"Sec'y National War Labor Board,
　　　　　　　"Washington, D. C.
　　"Have sent following to Judge McChord:

"Employers and employees are unable to agree upon the meaning of that portion of your award which establishes the basis for computing back pay for overtime; this contention prevails with respect only to plants which had in force the bonus and premium system on August first last; employees contend that the basis of computation should include not only the hourly rate paid in these factories on August first, but in addition thereto any premium or bonus then paid; employers contend that under the award this basis consists of the flat hourly rate paid August first exclusive of bonus or premium. We particularly refer you to paragraph one and two on page fifteen of award; respectfully suggest that your interpretation of this part of the award be telegraphed to us as promptly as possible.
　　　　　　　　　　　　"PAUL C. HUYBRECHT."

On the 30th day of April, 1919, one Woods, the chief administrator of the Labor Board, in reply to such lettergram, sent the following telegram to said Huybrecht:

"Paul C. Huybrecht,
　　　"Care Capitol Hotel, Madison, Wis.:

"After due conference with Umpire McChord on your request for interpretation of award under Docket one nine five, you are advised that bonuses and premiums shall not be taken into account in determining basis of computation of back pay for overtime. Correct basis is hourly rate which employee received on August first, nineteen eighteen if above minimum fixed by award, taking into account any increases granted since that time. If hourly rate on August first, nineteen eighteen is below minimum fixed by award, then such minimum is basis taking into account increases granted since that date when such increases raise hourly rate above the minimum. As to how the rate of wages over and above the 40c minimum shall be determined, I call attention to the fact that this award gives the workers the right to select

committees to represent them and directs that the employer shall meet with the committees of his own employees for the purpose of adjusting any grievances that may arise. The question of rate of wages above forty cents is a proper matter for determination by such employees' committees and their employers.          E. B. Woods,

"Chief Administrator, National War Labor Board."

Prior to the commencement of this action the claims of five of the defendant's former employees, namely, Hudson, Godden, Schulenberg, Nichols, and Blind, were assigned to the plaintiff and this action was brought to recover the reasonable value of the services of such employees on account of the alleged failure of the defendant to comply with the provisions of the award. Schulenberg and Nichols settled with the defendant and executed releases, and the court found that such settlements were binding on them, so that the judgment herein is based solely upon the claims of the three remaining assignors.

The court submitted a special verdict, which, however, becomes unimportant herein in view of the findings of the court as contained in the order for judgment and the failure of the plaintiff to appeal.

In its order for judgment the court in substance found that the Labor Board established a minimum rate of hourly wage; that there was no intent to change any wage in excess of the minimum fixed by the award; that as to any wage in excess of the prescribed minimum the rights of the parties were fixed by wage contracts existing on August 1, 1918, and as modified by subsequent agreements in individual cases; that disputes between employer and employees as to wages and as to interpretation of the award were proper subjects for adjustment by conference between a committee of the employees and the employer.

The court also found:

"Inasmuch as existing wage contracts fixed the rights of the parties until these wages were changed by agreement of the parties or abrogated or modified by the War Labor

Johnson v. Fuller & Johnson Mfg. Co. 183 Wis. 68.

Board, it is immaterial which party may have been responsible for the failure to meet in conference as to the hourly wage above the minimum fixed by the award. The refusal of either party, no matter how unreasonable that refusal may have been, did not abrogate existing contracts."

In determining the amount due the plaintiff as assignee for back pay of the assignors in accordance with the provisions of the award, the court found that the plaintiff was entitled to recover for the amount earned by the assignors between August 1, 1918, and April 1, 1919, based upon the wages paid at the beginning of such period, and taking into consideration any increases subsequently granted, and computed upon the provision of the award establishing an eight-hour day, with allowance for overtime as provided by the award, and that the plaintiff was entitled to the recovery of the sum so ascertained after deducting therefrom the amount received by the assignors by way of hourly wages during the period; and that the defendant was not entitled to any credits for the amounts paid as bonuses or premiums.

Judgment was entered in accordance with the provisions of such order for judgment, and the defendant thereupon appealed from such judgment.

For the appellant there was a brief by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *H. H. Thomas* and *H. L. Butler.*

For the respondent there was a brief by *Glenn P. Turner* of Madison, attorney, and *L. E. Gettle* of Madison and *Arthur Le Suer* of St. Paul, of counsel, and oral argument by *Mr. Turner* and *Mr. Gettle.*

DOERFLER, J. As correctly stated in the brief of defendant's counsel, "The precise question presented by this appeal is whether the defendant is entitled to credit for money paid as bonuses and premiums to its employees in making final settlement for back pay covering a period when the arbitration proceedings were pending."

What might be deemed a reasonable rate for an employee depends upon numerous conditions. An hourly rate of forty cents may constitute in reality higher pay under certain conditions than an hourly rate of eighty cents under different conditions. The real value of such rate must be measured by the purchasing power of a dollar, and in order to determine the value of the dollar many economic conditions must be taken into consideration, and among such are the cost of necessaries such as household provisions, clothing, the cost of merchandise in general, housing conditions, rentals for homes, cost of entertainment, etc. These items apparently received careful attention by the War Labor Board in its investigation, and it becomes readily apparent that the principal object of such investigation consisted in determining an average minimum for every employee to enable him to lead a comfortable and tolerable existence. Many of the employees of the defendant were receiving less than forty cents per hour as a wage. Investigation had been made by the War Labor Board in numerous communities throughout the United States for the purpose of ascertaining and fixing a minimum wage. Such minimum wage depends largely upon the existing conditions of the community investigated, and, inasmuch as such conditions necessarily are not uniform, some differences resulted on the subject, as was reflected by the varying awards in different localities. After what appears to have been a rather exhaustive investigation, the Labor Board in its award saw fit to establish in the defendant plant a minimum wage of forty cents per hour, on the basis of an eight-hour day, which resulted in granting to all employees during the period involved, receiving less than forty cents per hour, an increase to such minimum, with an extra allowance for overtime and for Sundays and certain holidays.

While the establishment of a minimum wage constituted the principal object and purpose of the Labor Board, nevertheless the board also considered with respect to all em-

ployees, whether receiving wages below or above the minimum, the establishment of an eight-hour day with extra pay for overtime and work performed on Sundays and certain holidays.  That the Labor Board had in mind a recognition of the wages paid by the employer on the 1st of August, 1918, and during the arbitration period, is clearly made manifest in that portion of its award where it provides: "Time in excess of eight hours shall be paid for at one and one-half the hourly rate, based on what the employee was receiving *on August first, nineteen eighteen,* taking into account the minima herein prescribed and including any increases granted since that date."  So that it can confidently be said that, unless changed by agreement, there was an express recognition of contract relations existing during the period, which contract relations, however, were subject to change from time to time.  It was not necessarily contemplated by the board that the wages should during the arbitration period continue at the same rate as existed on August 1, 1918.  Prices of commodities during such period had a strong upward tendency, and were increased from time to time; rentals were soaring, and, in fact, the living cost was highly on the increase.  Evidently with this in view, the board had in mind that differences from time to time might arise, and therefore prescribed a method for adjustment of such differences.  Union labor expressly received recognition, together with the right of collective bargaining, and it was therefore provided that grievances, which included wage grievances, were the proper subject of adjustment between committees of the employees and the employer.  A possible inability of the parties to agree with respect to alleged grievances also had the consideration of the board, so the award provided that such differences might be settled by an appeal to the Labor Board.  Unfortunately, before the serious disputes between the employer and employees could be finally and definitely arbitrated subsequent to the award, the War Labor Board went out of existence.  However, it was

held by the court that while these various means of settle-ment and adjustment were prescribed by the award, never-theless the award itself clearly recognized existing wage agreements, and that while the right to strike or the right of the individual employee to quit his employment at all times existed, nevertheless, unless a modification of the wage agreement resulted, such agreement constituted and formed the basis for all adjustments under the provisions of the award. Such was the decision of the court, and the same meets our approval.

When the award finally, on April 1, 1919, became effect-ive, a dispute arose between the employer and the employees as to a correct interpretation of the same. The stand taken by the parties is tersely and accurately set forth in the lettergram sent by Huybrecht in behalf of the employees to the secretary of the board:

"The employees contend that the basis of the computation should include not only the hourly rate paid in these fac-tories on August 1, but, in addition thereto, any premium or bonus then paid; employers contend that under the award this basis consists of the flat hourly rate paid August 1, exclusive of bonus or premiums."

In the interpretory telegram of the chief administrator of the board he replies:

"Bonuses and premiums shall not be taken into account in determining basis of computation of back pay for overtime. Correct basis is hourly rate which employee received on August first, nineteen eighteen, if above minimum fixed by award, taking into account any increases granted since that time. If hourly rate on August first, nineteen eighteen, is below minimum fixed by award, then such minimum is basis taking into account increases granted since that date when such increases raise hourly rate above the minimum."

The payment of a bonus by an employer in recent years has become quite common, and the meaning of the term "bonus" is quite generally understood and has been judi-

cially determined.   Where an employer pays a bonus he has in view a benefit accruing to him, consisting of an inducement to continuous service and of loyalty on the part of the employee.   The employee does not receive the bonus as a gift, as the literal meaning of the term would indicate, but, on the contrary, as a part of his wage.   Such has been the holding of this court in *Zwolanek v. Baker Mfg. Co.* 150 Wis. 517, 137 N. W. 769; and the term has been similarly defined in other jurisdictions.   *Ciarla v. Solvay Process Co.* 184 App. Div. 629, 172 N. Y. Supp. 426; *Kerbaugh v. Gray,* 212 Fed. 716; *Scott v. J. F. Duthie & Co.* 125 Wash. 470, 216 Pac. 853; *Payne v. U. S.* 269 Fed. 871.

The trial court held that the bonus in the instant case was not paid for services rendered at the time and in the manner that the hourly wage is paid; that it constituted a reward for continuous service.   The view thus expressed by the learned trial judge is not in accord with the popular view or with that laid down by the numerous authorities where the question was up for consideration.   We are clearly of the opinion that the trial court erred in its view, and hold that the bonus payment was one made for services rendered during the period of employment.

The award having definitely fixed the basis upon which the back pay is to be determined, and having limited the computation to the flat hourly wage received by the employee, and the Labor Board in its interpretory telegram having expressly excluded the bonus from consideration in determining the amount of back pay, we are forced to the inevitable conclusion that the defendant is entitled to credit upon the amount of back pay ascertained, to the extent of the actual amount paid by way of a bonus.   This conclusion becomes all the more certain in view of the recitals of the War Labor Board where it is said, "No piece work or bonus payments are made although the former bonus system was formerly operative."   It appears that at the time of the making of the award the War Labor Board had lost sight

of the fact that the payment of bonuses prevailed during the entire period under consideration, and was of the impression that some time previous to the award the bonus system had been abolished. What the board had in view was the recognition of a standard hourly rate of pay, and it clearly in its award constituted as the basis of the back pay such hourly rate. The bonuses, therefore, having been paid in consideration of services actually rendered by the employee, the amount paid as such becomes a proper item of credit on the part of the employer.

When we come to the premium system, however, we find that an entirely different situation exists. By the establishment of the premium system an employer held out to the employee an inducement for extraordinary effort. No obligation rested upon any employee under his contract to earn a premium. If he performed the duties of the ordinary skilful and diligent employee the premium did not accrue. On the other hand, if he exerted himself and performed extraordinary services which resulted in his finishing a certain job during a period which was less than the time consumed in the activities of the ordinary employee, he created something of value for the employer. In such extra effort he reduced the overhead expense of the employer. A fair and reasonable consideration of such extra effort demanded a full allotment to the employee and not a division of such effort between the employee and the employer. Whatever may be said, however, of the justice of the allowance, the same was fixed by agreement between the parties, and they have now no legal reason to complain thereof. To permit the employer to offset as against back pay under the award the amount of premiums actually earned and paid would in effect operate as a fraud upon the employee. The efforts of the employee were expressly stimulated by the inducement under this system held out by the employer, and the employer cannot be permitted to claim that the amount paid is a proper

offset.   The trial court held that the amount accruing under
the award for back pay to the employee cannot be offset by
the amount the employer paid under the premium system,
and we fully agree with his conclusions in that respect.

While under the agreement for arbitration and the award
the latter became retroactive as of date of August 1, 1918,
it nevertheless appears quite clear that the parties did not
contemplate that the abolition of the premium system should
be made retroactive.   The very nature of the system and
the results achieved under such system would indicate to
a certainty amounting to a demonstration that not only the
parties but the board had in view the abolition of the pre-
mium system after April 1, 1919.   The object desired by
the parties in the arbitration proceedings was to effect sub-
stantial justice, and not to create a palpable injustice, and
with this in view we have arrived at the conclusion that the
logic of the situation impels the holding that the abolition
of the premium system by the award was not retroactive
but was made applicable to the future.

The matter in controversy before the trial court did not
involve a consideration of the justice or fairness of the
award; neither are we concerned with such consideration
on this appeal.   The parties, under the existing circum-
stances, wisely resorted to an appeal to this governmental
agency for an adjustment of their differences.   The Labor
Board apparently performed its duty to the best of its
ability, and rendered its award after a rather extensive and
elaborate investigation.   The only question before us com-
prises the interpretation of the award.   From all the facts
and circumstances appearing in the record, and from a thor-
ough and painstaking study not only of the award but of
the telegram of Huybrecht and of the interpretory telegram
of the chief administrator of the board, we have come to
the conclusions herein set forth.

*By the Court.*—The judgment of the lower court is re-

versed, and the cause is remanded with directions to ascertain the amount due to the plaintiff as assignee of the claims of the three assignors in accordance with this opinion, and when the amount shall be so ascertained judgment shall be entered in the lower court accordingly.